UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES SICURELLO,

               Plaintiff,

v.

GREGORY L. SKIPPER et al.,

               Defendants.

_____/

Case No. 1:22-cv-220

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 10.) Plaintiff initiated this action by filing a 243-page complaint with 181 pages of exhibits. (ECF No. 1.) In an order (ECF No. 11) entered on March 30, 2022, the Court directed Plaintiff to file an amended complaint within 28 days. Specifically, the Court indicated that Plaintiff's rambling complaint, as pled, did not comply with Rule 8 of the Federal Rules of Civil Procedure. (*Id.*, PageID.498.) After receiving two extensions of time (ECF Nos. 13, 14, 15, 16), Plaintiff has filed his amended complaint (ECF No. 17).

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Wellman, Rectenwal and Unknown Parties #1, #2, and #3. The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's claims for declaratory and injunctive relief; (2) Plaintiff's First and Fourteenth Amendment claims regarding the grievance process; (3) Plaintiff's First Amendment access to the courts claims; and (4) Plaintiff's Ninth Amendment claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment damages claims premised upon unconstitutional conditions of confinement against Defendants Skipper, Dunigan, and Martin; and (2) Plaintiff's Eighth Amendment damages claims premised upon the denial of medical care against Defendants Howard, Slusher, and Nixton.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues Warden Gregory L. Skipper; Assistant Deputy Warden Unknown Dunigan; Prisoner Grievance Coordinator S. Wellman; Captain Unknown Martin; Corrections Officers Unknown Parties #1, #2, and #3; Doctor Suzanne Howard; and Registered Nurses Stacy L. Rectenwal, Unknown Slusher, and Unknown Nixton.[1]

While Plaintiff's 35-page amended complaint is much more concise than his original complaint, it is still not a particular model of clarity. Plaintiff writes in a rambling manner and

---

[1] Plaintiff names Unknown Nexton in the caption of his complaint but references Unknown Nixton throughout the body. The Court, therefore, adopts Nixton as the correct spelling of this Defendant's last name.

intertwines his factual averments with conclusions and legal arguments that are, at times, unintelligible. Nevertheless, the Court has gleaned the following factual averments from its review of his complaint.

In the amended complaint, Plaintiff alleges that on November 20, 2020, he was placed in quarantine after it was determined that he had been in close contact with an individual who had tested positive for COVID-19. (ECF No. 17, PageID.515.) To quarantine those who had been in close contact, personnel at RMI reopened G block. (*Id.*, PageID.516.) Plaintiff alleges that G block had been condemned in 2016 when an officer discovered that inmates "were in the process of tunneling their way to the outside area of the prison." (*Id.*) The unit was closed down because it was "determined to be prohibitively expensive to repair the damage and outside wall area." (*Id.*) Plaintiff avers that prior to the closure, G block housed the dog training program. (*Id.*)

Plaintiff was one of 13 prisoners transferred to G block on November 20, 2020. (*Id.*, PageID.517.) All 13 prisoners were told that they would be tested again in 14 days and returned to general population if they tested negative. (*Id.*) Plaintiff and the other prisoners were told "that they would have to move the dirt around as best they could for the present, as no supplies were in the unit and efforts were being made to acquire some supplies." (*Id.*, PageID.518.) Moreover, there was limited air circulation because windows had been screwed shut, and fans could not be used because of COVID-19 restrictions. (*Id.*)

Shortly after entering G block, Plaintiff's eyes started to water, and he suspected that the conditions therein were irritating his allergies. (*Id.*) An officer asked if Plaintiff was alright, and Plaintiff asked for cleaning supplies and air flow. (*Id.*) He "was told that 'they' knew the place was horrid, conditionally, but he would have to make [do]." (*Id.*) Sergeant Vandermaker (not a party)

3

indicated that he "would go check with the different units and get what he could find available for them to clean with right at this time." (*Id.*)

Plaintiff noted that there were dog feces still on the floor, and that the unit was covered with spider webs and dust. (*Id.*) He tried to run the water in his sink, and it "came out rust colored and immediately began leaking on the floor." (*Id.*) An officer told Plaintiff that he would make a note about the water in the logbook and ask the Assistant Resident Unit Manager to submit a work report. (*Id.*) Ultimately, Plaintiff and the other inmates did not receive cleaning supplies that day. (*Id.*, PageID.519.) Plaintiff also contends that he discovered the presence of black mold in the cells that day. (*Id.*) Plaintiff and the other inmates tried to use pieces of cardboard and clothing as cleaning supplies "in an effort to sanitize their living space." (*Id.*)

Plaintiff contends that a microwave was not provided until 4 days later and that food carts "became notoriously late getting from the chow hall building next door." (*Id.*, PageID.520.) Once the carts arrived, officers would take anywhere from 15 to 45 minutes to pass out trays. (*Id.*) Inmates in G block were also denied access to the store for the first two weeks. (*Id.*)

By November 21, 2020, Plaintiff's breathing had become labored and his "eyes were staying watery to the point of running tears all the time." (*Id.*) When the nurses made rounds that day, Plaintiff told them that something was wrong. (*Id.*) A nurse said that Plaintiff "looked peaked" but that they would not be able to do anything for him because he was not COVID-positive. (*Id.*) The nurse said it was "probably allergies or something that he could buy medication for." (*Id.*) The nurse would not accept a medical kite from Plaintiff because of his placement on quarantine status. (*Id.*)

Plaintiff indicates that he became "increasingly sicker" during his time in G block. (*Id.*) On Plaintiff's third day there, he spoke to Defendant Nixton and Mr. Deeree (not a party) about the

issues. (*Id.*, PageID.521.) Both claimed that nothing was wrong with Plaintiff and that they did not have to refer him for medical attention because "at most [P]laintiff had allergies and could get over the counter medications from the prisoner store." (*Id.*) Plaintiff claims that he ultimately secured assistance through intervention by Humanity for Prisoners and received a "diagnosis requiring lifetime medications." (*Id.*)

By November 23, 2020, Plaintiff "was experiencing loss of breath and difficulty in breathing." (*Id.*, PageID.522.) He also could not sleep well. (*Id.*) He avers that the ventilation in G block was not working, and that having the windows sealed made the issue worse. (*Id.*) "The heat made the air thick enough that [P]laintiff tasted the sewer smelling thickness of the air." (*Id.*) He told nurses, including Defendant Nixton, about the issues, including the fact that he was experiencing difficulty breathing and hot and cold flashes. (*Id.*) "Plaintiff was continuously ignored." (*Id.*) When Defendant Slusher made rounds to pass out medications, Plaintiff told her about the increasing symptoms. (*Id.*) She told Plaintiff that he was not positive for COVID-19 and that there was nothing they could do about Plaintiff being sick. (*Id.*)

Plaintiff alleges further that on November 22, 2020, G block prisoners refused to return to their cells after retrieving their meal trays because they wanted to talk to personnel about the conditions in the cell block. (*Id.*, PageID.522–23.) Defendant Martin came to the unit and told Plaintiff and the other inmates that if they did not return to the cells, "he would get physical and subject all of [them] to more time upon [their] sentences." (*Id.*, PageID.523.) Defendant Martin indicated that he understood the issues but "everything was being done that could be done." (*Id.*) He indicated that cleaning supplies could not be taken from other units and sent to G block because of the quarantine status. (*Id.*) Defendant Martin listened to Plaintiff's concerns but told him that

"his hands were tied" because the "deputy warden, by instructions of the warden[,] governed policy and customs in this area." (*Id.*)

On November 24, 2020, Lieutenant Strum (not a party) came to G block, and Plaintiff talked to him about the concerns. (*Id.*) Plaintiff showed Strum the dirty water, mold, and leaking walls. (*Id.*, PageID.524.) Strum also witnessed mice and cockroaches throughout the unit. (*Id.*) Plaintiff noted that the water stayed brown, unlike in other units where "it would be clear and then irregularly turn brown." (*Id.*)

Later that day, Defendant Martin and Assistant Deputy Warden King (not a party) came to G block. (*Id.*) Plaintiff told King about his health concerns and "the stomach aches which had begun the day before and were getting worse." (*Id.*) Plaintiff asked if there were any other units open in the facility for close contact quarantine. (*Id.*) King "said that it wasn't his call and he knew as the rest of us did, that grievances didn't get anything done either, so we were stuck with whatever happened." (*Id.*) Another inmate pointed out that the MDOC grievance process was not workable. (*Id.*) Afterwards, Defendant Nixton made rounds, and Plaintiff told her about his symptoms, including the stomach pains and "body pains through his muscle system." (*Id.*, PageID.525.) Defendant Nixton told Plaintiff that he did not have COVID so "it was probably a regular cold and [that he] would be alright." (*Id.*)

Plaintiff and other inmates "sought to have the warden interview [them] because by administrative code rule, the warden was responsible for responding to offender grievances." (*Id.*) Plaintiff submitted grievances about the conditions in G block. (*Id.*, PageID.526.) He claims that for one of the grievances, he "was deprived of the step one response and original form page." (*Id.*) He contends further that "[i]t is common knowledge within facilities that many prisoners fail to appeal when step one is not returned and thus is a common practice to retaliate against the prisoners

6

by failing to respond or losing the form." (*Id.*, PageID.526–27.) Plaintiff requested copies of certain grievance documents from Defendant Wellman, who never responded. (*Id.*, PageID.527.)

Plaintiff goes on to allege that he spent 27 days in G block and was released from quarantine on December 26, 2020. (*Id.*, PageID.529.) He only had access to the G block yard on his last day of quarantine. (*Id.*) Moreover, the phones were shut off for two days in an effort "to stop the offenders' family members from having cause information for calling RMI about the G-Block conditions." (*Id.*) Plaintiff contends that Defendants Skipper and Dunigan "visited G-Block more than once and never proscribed to correction of any of the irregularities" they saw. (*Id.*)

After being released to general population, Plaintiff continued to "request [a] DNA test on the mold with G-block." (*Id.*, PageID.530.) Defendant Howard told Plaintiff that "no such thing existed or could [a]ffect a [prisoner's] health." (*Id.*) Plaintiff then gathered information about exposure to mold and its effects upon individuals. (*Id.*)

Fourteen days after being released to general population, Plaintiff tested positive for COVID-19. (*Id.*) By that time, RMI "no longer was required to transfer prisoners testing positive for COVID-19 for quarantine purposes." (*Id.*) Plaintiff was moved to J block, fifth floor, "to be quarantined as a COVID-19 positive patient." (*Id.*) He heard that offenders were not being sent to G block anymore because of the conditions therein. (*Id.*) Plaintiff discovered, however, that J block also had mold. (*Id.*)

Plaintiff was moved to the third floor of J block on April 15, 2021. (*Id.*) At some point, he had a conversation with Defendant Dunigan about mold in the showers. (*Id.*) Defendant Dunigan told Plaintiff that a contractor would sand-blast the area to get rid of the mold. (*Id.*) Subsequently, Plaintiff's violence prevention program instructor, during a class meeting, indicated that "a number of grievances were getting unofficially blocked." (*Id.*) The instructor stated that "it was common

knowledge that the Director approved use of G-block for quarantine with tight security, but that the director had no knowledge of the conditions of that area." (*Id.*, PageID.531–32.)

On February 24, 2022, Plaintiff was diagnosed with sick building syndrome (SBS), which he initially incurred during his incarceration in G block. (*Id.*, PageID.532.) Plaintiff avers that exposure to mold is a common cause of SBS. (*Id.*, PageID.533.) He argues that the "status should have been known to or discovered by RMI medical and supervisory staff once they became aware of the extensive mold presence in the G-Block housing unit area." (*Id.*) Plaintiff also suggests that he has developed PTSD "caused by physical development responses to his exposure to RMI mold." (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) First Amendment retaliation and "free speech" claims; (2) Eighth Amendment claims premised upon conditions of confinement and denial of medical care; (3) Ninth Amendment claims; and (4) Fourteenth Amendment due process claims premised upon the unavailability of an adequate grievance system. (*Id.*, PageID.539.) Plaintiff also appears to raise a First Amendment access to the courts claim. (*Id.*, PageID.540.) He seeks declaratory relief. (*Id.*, PageID.540–41.) Plaintiff also seeks an order directing Defendants to "provide the cost of any remedial medications[,] treatments[,] or other necessities" for his illness. (*Id.*, PageID.541.) He also requests that Defendants provide funds for adequate treatment of his illness. (*Id.*, PageID.540.) The Court construes this request as a request for both prospective injunctive relief in the form of providing medical care and a request for damages.

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a

complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, Plaintiff asserts claims premised upon violations of his First, Eighth, Ninth, and Fourteenth Amendment rights.

### A.      Claims for Declaratory and Injunctive Relief

Plaintiff seeks declaratory relief as well as prospective injunctive relief in the form of the provision of medical care from Defendants. Plaintiff, however, is no longer confined at RMI, which is where he avers that Defendants are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that injunctive relief is appropriate only where the plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Plaintiff is now incarcerated at ARF, and Defendants are not employed at that facility. Plaintiff, therefore, cannot maintain his claims for prospective declaratory and injunctive relief, and the Court will dismiss those claims.

### B.      Claims Against Defendants Rectenwal and Unknown Parties

Plaintiff names Registered Nurse Rectenwal and Corrections Officers Unknown Parties #1, #2, and #3 as Defendants; however, Plaintiff fails to name these Defendants in the body of his amended complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, Plaintiff's references to RMI "staff" and "personnel" throughout the complaint are insufficient to state claims for relief against Defendants Rectenwal and Unknown Parties. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for" the incidents Plaintiff describes in his complaint. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting

11

*Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff's claims against Defendants Rectenwal and Unknown Parties #1, #2, and #3 will, therefore, be dismissed.

### C.     Claims Regarding the Grievance Process

Throughout his amended complaint, Plaintiff takes issue with the MDOC's grievance procedure, particularly how he believes it has been inadequately implemented at RMI. In this context, Plaintiff suggests that he has a First Amendment right to free speech and is "entitled to speak out for the improvement of the institutional conditions and treatment practices." (ECF No. 17, PageID.539.) He also suggests that the inadequacies of the grievance system violate his Fourteenth Amendment due process rights. (*Id.*) Plaintiff avers that Defendant Wellman refused to provide copies of certain exhibits he submitted with his grievances. (*Id.*, PageID.527.)

Plaintiff, however, has no due process right to file a grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Furthermore, Plaintiff's right to petition the government is not violated by any failure by Defendants to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government

officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999);

*see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to

petition protects only the right to address government; the government may refuse to listen or

respond). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

   Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.

*See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances

typically is not violated when prison officials prohibit only 'one of several ways in which inmates

may voice their complaints to, and seek relief, from prison officials' while leaving a formal

grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing

*Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's

ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v.*

*DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented

from filing a grievance, his right of access to the courts to petition for redress of his grievances

(i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances,

and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.

*See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430

U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available*

administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to

the grievance process, the process would be rendered unavailable, and exhaustion would not be a

prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016)

(reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference

of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, Plaintiff cannot maintain First and Fourteenth Amendment claims premised upon any interference with his access to the grievance process and general beliefs about the inadequacy of the grievance process itself. Accordingly, such claims, including his claims against Defendant Wellman, will be dismissed.

### D.    First Amendment Claims

#### 1.    Retaliation

Plaintiff suggests that Defendants violated his First Amendment rights by retaliating against him. (ECF No. 17, PageID.539.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

14

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff's only mention of retaliation in his amended complaint is when he avers that "[i]t is common knowledge within facilities that may prisoners fail to appeal when step one is not returned and thus is a common practice to retaliate against the prisoners by failing to respond or losing the form." (ECF No. 17, PageID.526–27.) While the filing of a nonfrivolous prison grievance constitutes protected conduct, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), the denial or refusal to process a grievance does not constitute adverse action, *see, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims.

### 2.    Access to the Courts

Plaintiff also vaguely suggests that Defendants violated his First Amendment right to access the courts. (ECF No. 17, PageID.540.) It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases,

as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's complaint is utterly devoid of facts suggesting that he suffered an actual injury to any litigation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's First Amendment access to the courts claims will be dismissed.

### E.      Ninth Amendment Claims

Plaintiff contends that Defendants' actions or inactions violated his Ninth Amendment rights. (ECF No. 17, PageID.539.) The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment, however, "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*,

926 F.2d 532, 537 (6th Cir. 1991). Plaintiff's Ninth Amendment claims will, therefore, be dismissed.

### F.        Eighth Amendment Claims

Throughout his amended complaint, Plaintiff faults Defendants Skipper, Dunigan, and Martin for subjecting him to the conditions he encountered while in quarantine on G and J blocks. He also faults Defendants Howard Slusher, and Nixton for failing to provide any medical treatment for the symptoms he developed during his time on those blocks. The Court has construed Plaintiff's amended complaint as asserting Eighth Amendment claims based upon unconstitutional conditions of confinement and deliberate indifference to medical needs.

### 1.        Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

17

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Throughout his amended complaint, Plaintiff suggests that his Eighth Amendment rights were violated because of the conditions on G and J blocks. Plaintiff avers that there was mold throughout the units. He also avers that because G block had not been used since 2016, the ventilation did not work well, the windows were screwed shut, and that there was dust, spider webs, and dog feces (from the prior dog program) still throughout the unit. The water came out

brown, and the toilets and walls leaked. He alleges further that he and other inmates were not permitted cleaning supplies and had to use rags, cardboard, and paper to try to clean. Plaintiff contends that he suffered watery eyes, stomach pains, aches, and other medical symptoms, and was ultimately diagnosed with sick building syndrome. Plaintiff avers that despite raising these issues with Defendants Skipper, Dunigan, and Martin, nothing was done. Given these allegations, the Court concludes that Plaintiff's amended complaint sets forth plausible Eighth Amendment damages claims regarding conditions of confinement against Defendants Skipper, Dunigan, and Martin. *See Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (concluding that a prisoner who alleged that he was forced to remain in a cell covered in fecal matter for three days stated a claim under the Eighth Amendment).

### 2.    Denial of Medical Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Throughout his amended complaint, Plaintiff avers that he immediately started suffering adverse symptoms upon his placement in G block and that he consistently experienced watery eyes, congestion, stomach pains, and body aches. He consistently sought medical attention, but Defendants Slusher and Nixton consistently told him there was nothing they could do because, at the time, Plaintiff was not positive for COVID-19. Plaintiff also contends that he requested treatment and tests to see if the black mold had caused his symptoms, and such requests were denied by Defendant Howard. Ultimately, Plaintiff was diagnosed with SBS, and avers that his prolonged exposure to mold and other conditions in G and J blocks caused his sickness. Given Plaintiff's allegations, he has set forth plausible Eighth Amendment damages claims premised upon the denial of medical care against Defendants Slusher, Nixton, and Howard.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Wellman, Rectenwal and Unknown Parties #1, #2, and #3 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's claims for declaratory and injunctive relief; (2) Plaintiff's First and Fourteenth Amendment claims regarding the grievance process; (3) Plaintiff's First Amendment access to the courts claims; and (4) Plaintiff's Ninth Amendment claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment damages claims premised upon unconstitutional conditions of confinement against Defendants Skipper, Dunigan, and Martin; and (2) Plaintiff's Eighth Amendment damages claims premised upon the denial of medical care against Defendants

Howard, Slusher, and Nixton.

      An order consistent with this opinion will be entered.

Dated:   <u>August 22, 2022</u>         <u>/s/ Paul L. Maloney</u>
                                           Paul L. Maloney
                                           United States District Judge