UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SICURELLO, #594701,

    Plaintiff,                               Hon. Paul L. Maloney

v.                                                  Case No. 1:22-cv-220

GREGORY L. SKIPPER, et. al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 36) and Defendant's Motion for Summary Judgment (ECF No. 38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions both be granted and this matter terminated.

## BACKGROUND

Plaintiff initiated this action against numerous individuals concerning events which allegedly occurred when he was incarcerated at the Michigan Reformatory (RMI). (ECF No. 17). As the Court previously observed, Plaintiff's allegations are largely "unintelligible." (ECF No. 18, PageID.553-54). Accordingly, the Court dismissed the majority of Plaintiff's claims. (ECF No. 18). At this juncture, the only claims remaining are: (1) Eighth Amendment conditions of confinement claims against

Defendants Skipper, Dunigan, and Martin; and (2) Eighth Amendment denial of medical treatment claims against Defendants Howard, Slusher, and Nixon.  (*Id.*).

With respect to his remaining claims, Plaintiff alleges the following.  On November 20, 2020, Plaintiff was placed in quarantine after it was determined that he had been in close contact with a prisoner who tested positive for COVID-19.  Plaintiff was part of a group of prisoners transferred to G-block, an area of the facility that had been closed several years previously.  The conditions in G-block were "horrid" and caused Plaintiff to become ill.  Plaintiff alleges that Defendants Skipper, Dunigan, and Martin were responsible for housing him in such filthy conditions.  Plaintiff further alleges that Defendants Howard, Slusher, and Nixon denied his requests for medical treatment on several occasions between November 23, 2020, and February 24, 2022.

Defendants now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.  Plaintiff has responded to Defendants' motions.  The Court finds that oral argument is unnecessary.  *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."  *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

-4-

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

      A.      Defendants Howard, Slusher, and Nixon

Defendants have submitted evidence that Plaintiff pursued only one grievance regarding his remaining claims. On April 28, 2021, Plaintiff submitted a grievance alleging that, on November 20, 2020, he "advised a C/O working in G-block that [his] cell was full of black mold[,] that [he] couldn't breath[e] and there was no air circulation." (ECF No. 37-3, PageID.656). Plaintiff further alleged that he complained about his cell conditions to other prison officials without resolution. (*Id.*). Plaintiff's grievance was rejected at Step I as untimely, a determination that was upheld at Steps II and III. (*Id.*, PageID.652-57).

Defendants Howard, Slusher, or Nixon are not named in this grievance and, moreover, nothing in this grievance concerns Plaintiff's allegations that Defendants Howard, Slusher, and Nixon denied his later requests for medical treatment. In short, this grievance fails to exhaust Plaintiff's remaining claims against these defendants. Plaintiff neither disputes this nor asserts that he filed other grievances regarding his claims against Defendants Howard, Slusher, or Nixon. Instead, Plaintiff argues that prison officials improperly rejected his grievance as untimely. This argument is addressed below, however, even if the Court assumes that Plaintiff's grievance was improperly rejected it does not alter the analysis because Plaintiff's grievance does not concern his claims against Defendants Howard, Slusher, or Nixon. Accordingly, the undersigned recommends that Defendants Howard, Slusher, and Nixon are entitled to summary judgment.

B.     Defendants Skipper, Dunigan, and Martin

As previously noted, Plaintiff alleges that Defendants Skipper, Dunigan, and Martin are responsible for the "horrid" conditions he experienced in G-block. The grievance identified above concerns this issue, but Plaintiff does not assert any claims against Defendants Skipper or Dunigan in the grievance. Accordingly, the undersigned recommends that Defendants Skipper and Dunigan are entitled to summary judgment.

With respect to Defendant Martin, who is named in Plaintiff's grievance, the analysis differs but the result is the same. As previously noted, prior to filing a grievance prisoners must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.

In his Step I grievance, Plaintiff alleged that he attempted to resolve the issue with staff on November 24, 2020, but thereafter waited more than five months to file his grievance. Plaintiff's grievance was, therefore, rejected as untimely at all three steps of the grievance process. Plaintiff counters that his grievance was improperly rejected as untimely.

The Court recognizes that it is not obligated to simply disregard errors or mistakes in the enforcement or application of prison grievance policies. *See, e.g., Burnett v. Walsh*, 2020 WL 3716555 at *3-4 (E.D. Mich., June 15, 2020) (court recommended that

-7-

motion for summary judgment on failure to exhaust grounds be denied after finding that MDOC "improperly rejected" prisoner's grievance)[1]; *Ashley v. Boayue*, 2020 WL 5985203 at *5-6 (E.D. Mich., Feb. 18, 2020) (court recommended that motion for summary judgment on failure to exhaust grounds be denied in part after finding that MDOC "improperly rejected" prisoner's grievance)[2].

In his Step I grievance, Plaintiff offers no explanation or excuse for his failure to timely file his grievance. (ECF No. 37-3, PageID.656). In his Step II grievance appeal, Plaintiff argued that his delay in filing his grievance should be excused because he was in an "isolation unit" from November 24, 2020, through April 28, 2021. (*Id.*, PageID.653, 655). According to Plaintiff, during this time "access to information was extremely limited" and "access to legal material was in fact questionable." (*Id.*, PageID.655). Plaintiff did not allege, however, that he was denied grievance forms or otherwise prevented from filing grievances. In fact, Plaintiff conceded that he was able to file other grievances during the time he was in the "isolation unit." (*Id.*). Plaintiff's Step II grievance appeal was denied. (*I,* PageID.654). Plaintiff advanced similar arguments in his Step III grievance appeal which were likewise rejected. (*Id.* at PageID.652-53).

---

[1] This recommendation was adopted as the opinion of the Court after no party objected thereto. *Burnett v. Walsh*, 2020 WL 3639564 (E.D. Mich., July 6, 2020).

[2] This recommendation was adopted as the opinion of the Court after no party objected thereto. *Ashley v. Boayue*, 2020 WL 4282198 (E.D. Mich., July 27, 2020).

In response to the present motion, Plaintiff argues that he was unable to timely file a grievance because MDOC Director's Office Memorandum 2020-30R3 "made administrative remedies unavailable." This memorandum, which took effect May 26, 2020, outlined the "precautions [MDOC] staff shall take to help prevent COVID-19 from spreading."[3] But nothing in this memorandum directly or indirectly restricts or limits a prisoner's ability to submit prison grievances.

Plaintiff's vague, and unsworn, statements that he was somehow prevented from timely filing a grievance simply fail to advance his position. Simply put, Plaintiff has presented no evidence in support of his argument that he was somehow prevented from timely filing his grievance. Likewise, Plaintiff's argument that summary judgment is premature because he needs to conduct discovery is rejected as Plaintiff has failed to submit an affidavit or sworn declaration that "for specified reasons, [he] cannot present facts essential to justify [his] opposition" to Defendant's motion. *See* Fed. R. Civ. P. 56(d). Accordingly, the undersigned recommends that Defendant Martin is entitled to summary judgment.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 36) be granted and Defendant's Motion for Summary Judgment (ECF No. 38) be granted. Specifically, the undersigned

---

[3] MDOC Director's Office Memorandum 2020-30R3 is attached to this Report and Recommendation as an Appendix.

-9-

recommends that Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Skipper, Dunigan, and Martin and Plaintiff's Eighth Amendment denial of medical treatment claims against Defendants Howard, Slusher, and Nixon be dismissed without prejudice for failure to properly exhaust administrative remedies and this action terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 20, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge